IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-03039-01-CR-S-MDH ) |
| KENNETH HOWARD WORTHY, | ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion to Suppress Evidence (Doc. 31) and Defendant's Motion to Suppress Statements (Doc. 32). On May 12, 2022, United States Magistrate Judge David P. Rush issued a Report and Recommendation (Doc. 43), recommending that Defendant's Motions be denied. Defendant filed objections to the Report and Recommendation (Doc. 46). The Court has reviewed the Report, the Motions, and the entire record in this matter. The Court finds that the Report and Recommendation is well founded in law. Accordingly, it is **ORDERED** that the Report and Recommendation is incorporated by reference and adopted, and Defendant's Motion to Suppress Evidence (Doc. 31) is **DENIED**. Defendant's Motion to Suppress Statements (Doc. 32) is **DENIED**.

## BACKGROUND

Defendant has been charged by indictment with one count of sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of receiving and distributing a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (Doc. 17.)

1

In the Motion to Suppress Evidence, Defendant seeks to suppress "any and all evidence obtained directly and indirectly as a result of [an] unlawful detention, search and seizure, and arrest of [Defendant] by the police" on March 4, 2021, including "all evidence seized from" Defendant and "all statements allegedly taken from" Defendant on March 4, 2021, and all dates thereafter. (Doc. 31 at 9.) Specifically, Defendant seeks suppression of "any and all evidence that was found on his cell phone." *Id*. He claims that "said evidence was observed and obtained in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution." *Id*.

In the Motion to Suppress Statements, Defendant moves for suppression of "all statements made by [him] to Federal and State agents on March 4, 2021, as the statements were obtained from [him] in violation of his rights in accordance with the Fourth, Fifth, and Sixth Amendments to the United States Constitution." (Doc. 32 at 1.) The Government filed Suggestions in Opposition to the motions, and Defendant filed a Reply in support of the motions. (Docs. 35, 38.) An evidentiary hearing was held on January 11, 2022. (Doc. 40).

A more detailed discussion of the facts in this matter are included in the Report and Recommendation, which are hereby incorporated herein. Defendant objects to certain aspects of the findings of fact. (Doc. 46). Specifically, Defendant objects to alleged "omissions" of facts by the Magistrate Judge. Defendant requests this Court to include certain factual finding as part of the Court's findings of fact. Most prominently, Defendant asks the Court to acknowledge that there were vehicles in the Defendant's shop where Defendant's interrogation took place. The Court acknowledges this evidence. (*See* Doc. 42, p. 32). Defendant also repeatedly requests that this Court find, in its factual findings, that a police officer, Detective Pounders, was "blocking the only entry and exit point of the shop, effectively barricading [Defendant] inside the shop…". This is

not a finding of fact but rather an argumentative statement, which is explicitly included and discussed in the Report and Recommendation.

## DISCUSSION

**I.    Motion to Suppress Evidence**

In the Motion to Suppress Evidence, Defendant seeks to suppress "any and all evidence obtained directly and indirectly as a result of [an] unlawful detention, search and seizure, and arrest of [Defendant] by the police" on March 4, 2021, including "all evidence seized from" Defendant and "all statements allegedly taken from" Defendant on March 4, 2021, and all dates thereafter. (Doc. 31 at 9.) Specifically, Defendant seeks suppression of "any and all evidence that was found on his cell phone." *Id*. He claims that "said evidence was observed and obtained in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution." *Id*.

American citizens are protected from "unreasonable searches and seizures" by the Fourth Amendment. U.S. Const. amend. IV. "A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution." *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014) (quoting *United States v. Barraza–Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013)) (internal quotations omitted).

However, "[a]n individual may validly consent to an otherwise impermissible search if, in the totality of circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." *United States v. Rambo*, 789 F.2d 1289, 1296 (8th Cir. 1986) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973)). "The question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions." *Id*. at 1297. To

3

determine whether consent was given voluntarily, the court should look at the totality of the circumstances, including consideration of the following factors:

> (1) the individual's age; (2) his general intelligence and education; (3) whether he was intoxicated at the time; (4) whether he was informed of his *Miranda* rights before consenting; (5) whether any previous arrests would have informed him of his rights and protections; (6) the length of time he was detained; (7) whether the officers acted in a threatening manner; (8) whether the officers made any promises or misrepresentations; (9) whether the officers had the individual in custody or under arrest at the time; (10) whether he consented in public; and (11) whether the individual was silent during the search.

*United States v. Johnson*, 619 F.3d 910, 918 (8th Cir. 2010).

Defendant's argument that he did not freely and voluntarily consent to the search of his phone is highly unpersuasive. Defendant, in part, argues that he was coerced, because he is "a middle-aged tire truck delivery driver" who "had never been arrested before and was not aware of the rights and protections afforded to him by the legal system." (Doc. 32 at 6).

Viewing Defendant's personal characteristics first, as discussed above, the mere fact that Defendant is a middle-aged delivery driver does not support his claim that he did not know what he was doing or did not reasonably appreciate the nature and significance of his actions. In fact, Defendant's conduct and speech throughout the interview show that he knew what he was doing and was aware of the consequences. Defendant was not intoxicated during the interview, and he was fully advised of his *Miranda* rights before consenting (discussed in detail below). In his favor, Defendant has no criminal history which would have informed him of his rights and protections, although notably the officers were not required to inform him of his right to refuse consent. *See United States v. Drayton*, 536 U.S. 194, 206-07 (2002); *United States v. Cedina-Medina*, 366 F.3d 682, 687-88 (8th Cir. 2004).

Furthermore, although the officers did not verbally advise Defendant of his right to refuse consent, the one-page consent form Defendant signed specifically informed Defendant of his

"constitutional right not to have a search made of the electronic communication equipment hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search."

Considering the environmental factors, first, the 39-minute interview was relatively short. The Court agrees with the Magistrate Judge's finding that no threatening behavior on the part of the officers, even including the fact that there were three vehicles inside Defendant's shop, as noted by Defendant. Further, there were no promises or misrepresentations made to Defendant to obtain his consent. The consent form signed by Defendant specifically states that he was consenting "voluntarily and without threats or promises of any kind." In Defendant's favor, the consent was not given in public, although it was given at Defendant's residence in his shop per his choice. The Court finds that the Magistrate's Judge conclusion that Defendant was not in custody or under arrest at the time consent was given is well-founded in law, though the totality of the circumstances clearly indicate that the Defendant's consent was voluntarily without this finding.

Lastly, Defendant was neither silent during the interview nor did he object to the search. During the interview, Defendant voluntarily showed his phone to Task Force Officer Neuschwander, who asked, "Mind if I look?" to which Defendant answered "Yeah, you're fine" then handed the phone to TFO Neuschwander. A short time later, TFO Neuschwander asked Defendant clearly and unambiguously, "Do you give me consent to do a forensic extraction on your phone?" to which Defendant replied, "Go for it." TFO Neuschwander then prepared and presented a short one-page consent form to Defendant, telling him, "You can read through this if you like. It just says that you're giving me permission to do a forensic extraction on your device. Just sign there." Defendant looked at the consent form briefly then signed it. The very first sentence of the one-page consent form clearly advises Defendant of his right to refuse consent to search.

5

Accordingly, the Court finds that Defendant was given multiple opportunities to refuse consent or object to the search, but affirmatively consented each time.

The Court agrees with the conclusion of the Report and Recommendation that, under the totality of the circumstances, Defendant's personal characteristics and the environment in which the interview was conducted both heavily support a finding that Defendant freely and voluntarily consented to the search of his phone, with no coercion by the officers. Defendant also clearly indicated his consent to search to the officers both verbally and in writing.

In the Motion to Suppress Evidence, Defendant also generally seeks the suppression of "all observations made by the police and all evidence seized from [Defendant and] all statements allegedly taken from [Defendant] on March 4, 2021, and on all dates thereafter," as fruit of the poisonous tree. (Doc. 32 at 9.) Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). As discussed above, however, Defendant validly consented to the search his phone. As a result, the search of the phone was lawful, and any fruit of the poisonous tree contention fails. Accordingly, the Motion to Suppress Evidence (Doc. 31) is **DENIED**.

## II.   Motion to Suppress Statements

In the Motion to Suppress Statements, Defendant moves for suppression of "all statements made by [him] to Federal and State agents on March 4, 2021, as the statements were obtained from [him] in violation of his rights in accordance with the Fourth, Fifth, and Sixth Amendments to the United States Constitution." (Doc. 32 at 1.) He argues that his statements on March 4, 2021, were "made under interrogation and while in custody and must be suppressed because his waiver of his right [against] self-incrimination was not made voluntarily, knowingly, and intelligently." *Id*. at 9.

Defendant further asserts that his "will was overborne and his 'capacity for self-determination' was critically impaired due to the actions of law enforcement." *Id.*

The Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Thus, "an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The parties do not dispute that the interview of Defendant was an interrogation under *Miranda*. Defendant claims that he was in custody during the interview. The Court finds that the conclusion that Defendant was not, in fact, in custody contained in the Report and Recommendation is well-founded in law. However, it is not necessary for the Court to find in this case. Even if Defendant was in custody, he was fully advised of his rights against self-incrimination prior to any questioning in accordance with *Miranda* and validly waived those rights.

TFO Neuschwander advised Defendant of his rights in accordance with *Miranda* at the start of the interview, and Defendant waived those rights voluntarily, knowingly, and intelligently. Under *Miranda*, "any time a person is taken into custody for questioning, a law enforcement officer must, prior to questioning, advise the individual of his right to be free from compulsory self-incrimination and his right to the assistance of counsel." *Axsom*, 280 F.3d at 500. For a waiver of these rights to be valid, it must have been made voluntarily, "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Additionally, the waiver of rights must have been made knowingly and intelligently, which requires "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* To determine the validity of a waiver, the court should consider

the totality of the circumstances." *Id*. "Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Id*. (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)).

Here, at the start of the interview, before asking any questions of Defendant, TFO Neuschwander advised Defendant as follows:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer, one can be appointed to represent you before any questioning if you wish. You can decide at any time to exercise your rights and not answer any questions or make any statements.

Next, TFO Neuschwander asked Defendant if he understood those rights, to which Defendant replied, "Yes, sir." Finally, TFO Neuschwander asked Defendant if he still wanted to talk to him, and Defendant said, "Yeah, I'm just curious what's going on." Accordingly, there is no question that TFO Neuschwander fully advised Defendant of his rights against self-incrimination and to counsel in accordance with *Miranda*. The question is whether Defendant waived these rights voluntarily, knowingly, and intelligently.

### a. Defendant's waiver was voluntary

For a waiver to be valid, it must have been made voluntarily, "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Vinton*, 631 F.3d at 483. To determine whether a waiver was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne. *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). Police coercion is a necessary prerequisite to a determination that a waiver was involuntary. *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). However, "[a]ny interview of one suspected of a crime by a police officer will have coercive

aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Thus, there must be a showing of "threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2002).

Defendant argues that his waiver was not voluntary, and his will was overborne because "with another officer barricading [him] in his own shop," TFO Neuschwander advised Defendant of the information they expected to learn from Mr. Kelly's electronic device, expressed concern for the children involved, told him not to lie, told him that Mr. Kelly had no reason to lie, and told him that it is a crime to lie to federal officers. (Doc. 32 at 8-9.)

The Court does not find Defendant's will was overborne rendering his waiver involuntary by any actions of the officers. First, as discussed in detail in the Report and Recommendation, the evidence does not support the contention that Defendant was "barricaded" in his shop. Also, there were no threats, violence, or promises made during the interview. TFO Neuschwander used no deception, as his statements and advice to Defendant accurately reflected his knowledge and belief at the time. *See Simmons*, 235 F.3d at 1133 ("Officers may elicit statements by claiming not to believe the accused's denials"). Furthermore, the interview lasted only 39 minutes. In short, viewing the totality of the circumstances, the Court finds no evidence that Defendant's will was overborne by the interview, and as a result his waiver was voluntary.

**b. Defendant's waiver was knowing and intelligent**

Defendant further argues his waiver was not made knowingly, because he is "a middle-aged tire truck delivery driver" who "had never been arrested before and was not aware of the rights and protections afforded to him by the legal system." (Doc. 32 at 6.) First, where "a suspect

9

has a somewhat diminished capacity to resist coercion due to a mental defect, … a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion. *Vinton*, 631 F.3d at 483. Here, the Court has found no evidence of police coercion. Furthermore, Defendant's bare assertion that he was a "middle-aged tire truck delivery driver" fails to show any diminished capacity to resist coercion due to a mental defect. Also, Defendant was not under the influence of any drugs or alcohol that may have impaired his judgment.

Although Defendant lacked experience with the criminal justice system, this alone is insufficient to show his waiver was not made knowingly and intelligently, particularly where TFO Neuschwander confirmed several times that Defendant understood his rights. The overall tenor of the interview confirms this, as throughout the interview Defendant answered all questions promptly and appropriately, and in turn asked relevant questions of TFO Neuschwander, indicating he has at least average intelligence and understood his rights and the consequences of proceeding with the interview. Therefore, under the totality of the circumstances of the interview, Defendant's waiver was made knowingly and intelligently. In conclusion, Defendant was fully advised of his *Miranda* rights and waived those rights voluntarily, knowingly, and intelligently. The Motion to Suppress Statements (Doc. 32) is **DENIED**.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Report and Recommendation (Doc. 43) of the United States Magistrate Judge is **ADOPTED** and incorporated herein. The Defendant's objections (Doc. 46) are considered and overruled. Defendant's Motion to Suppress Evidence (Doc. 31) is **DENIED**. Defendant's Motion to Suppress Statements (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 21, 2022  */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**United States District Judge**